**FILED**

July 28, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ lad
                                    DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| RAYMOND E. LUMSDEN, | ) |
| Plaintiff | ) |
| | ) Case No. **6:22-cv-00822** |
| vs. | ) |
| | ) **VERIFIED** |
| | ) **CIVIL RIGHTS COMPLAINT** |
| | ) **[§ 1983]** |
| BRYAN COLLIER, BOBBY LUMPKIN, | ) |
| OSCAR MENDOZA, BRUCE ARMSTRONG, | ) |
| MICHAEL ALSOBROOK, M. VOYLES, | ) |
| CEPHAS ANDERSON, DR. MCKINNEY, | ) |
| J. BACK, H.M. PEDERSON, | ) |
| Defendants. | ) |
| | ) |

COMES NOW, Raymond E. Lumsden #2109472, plaintiff pro se, who presents the following civil rights complaint and claims for compensatory, declaratory, and injunctive relief as follows:

## I.   Introduction

1.   This action places before the Court a lawsuit involving the Texas Department of Criminal Justice, as well as administration of the Hughes Unit located in Gatesville, Texas and a private medical contractor of the University of Texas Medical Branch.

2. The complaint alleges that a critical lack of staffing within the Texas Department of Criminal Justice as well as on the Hughes Unit, has caused a recent inmate escape and murder of five innocent civilian's by that escaped inmate, denial of outdoor recreation, denial of religious services, adequate and sufficient

1.

food, exposure to unsafe illegal substances and contraband, risk of assault, and extensive delay and denial of mail without a right to appeal the denial. Exposure to excessive heat conditions, denial of adequate and medically necessary footwear, insufficient and inadequate medical treatment, discrimination of religion and religious practices, and deliberate indifference. Lastly, the threat to retaliate for exercising grievance in these regards.

## II.   Parties

### Plaintiff:

3.   Raymond E. Lumsden ("Plaintiff") is currently an inmate at the Hughes Unit in Gatesville, Texas. At all times relevant to this action, Plaintiff was housed at 3201 FM 929, Gatesville, Texas.

### Defendants:

4.   Bryan Collier is the Executive Director for the Texas Department of Criminal Justice charged with the custody and care of the plaintiff, appointment, employment, and oversight of all facility and department staff.

5.   Bobby Lumpkin is the Director of Institution Divisions for the Texas Department of Criminal Justice charged with oversight of all Texas Prision Units.

6.   Oscar Mendoza is the Deputy Director of the Texas Department of Criminal Justice charged with oversight of Texas Prison Units, under supervision of Byran Collier and Bobby Lumpkin.

7.   Bruce Armstrong is the Senior Warden at the Hughes Unit charged with the direct custody and care of plaintiff.

8.   Michael Alsobrook is a former warden of the Hughes Unit who was charged with the direct custody and care of the plaintiff.

9.   M. Voyles is the Unit Major on the Hughes Unit charged with the overall operations and security as well as the direct custody and care of plaintiff.

10.   Cephas Anderson is the Chaplain on the Hughes Unit charged with ensuring the religious rights and practices of plaintiff.

11. Dr. McKinney is a medical contractor with the University of Texas Medical Branch responsible for the treatment and care of plaintiff's Hypogonadism.

12. J. Back is a grievance supervisor charged with the duty to correct policy and constitutional violations reported by plaintiff.

13. H.M. Pederson is a grievance supervisor charged with the duty to correct policy and constitutional violations reported by the plaintiff.

14.   At all times relevant to this complaint, defendants acted under the color of state law. All defendants are hereby sued in both their individual capacity for damages, and official capacity for injunctive relief, jointly and severally.

## III.   Jurisdiction

15.   Jurisdiction is asserted pursuant to the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of the rights secured by the United States Constitution, deprived

by persons acting under color of state law. The Court has the jurisdiction over these matters pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

16. Plaintiff's claim for injunctive relief is authorized pursuant to 28 U.S.C. §§ 2283, 2284.

17. The United States District Court for the Western District of Texas-Waco, is the appropriate venue for trial pursuant to 28 U.S.C. § 1391(b)(2); the County of Coreyell is where the violations and events occurred.


## IV.  Facts

### A. Critical Lack of Staffing

18. In May of 2022, inmate Lopez manipulated the critical lack of staffing on the Hughes Unit, to smuggle materials onto the prison bus. Later, again manipulating the lack of staffing on the bus, he escaped from TDCJ custody. Eventually, he sought out and murdered a family of five innocently and brutally. To date, and even after, the staffing level on the Hughes Unit and throughout TDCJ remains critically absent to the extent that you can literally walk across the prison and not see a single officer anywhere. Without immediate Government oversight, this incident will likely happen again because inmates are very much aware of the lack of staffing. Thus, injunction in necessary to protect innocent civilians from being victim's, and murdered as the Collins Family was.


### 1. Denial of Recreation

19.  Due to the critical lack of staffing, plaintiff is denied access to outside recreation. This has caused plaintiff to suffer drastic health consequences such as headaches, cramping, fatigue, increased weight gain, anxiety and stress, etc.

### 2. Exposure to Excessive Heat

20.  Temperatures in Texas Prison Cells often exceed 120 degrees in the summer months due to the absence of air conditioning. In addressing a lawsuit against them in the United States District Court For The Southern District of Texas, and in addressing the conditions, TDCJ instituted AD-10.64. However, because of the critical lack of staffing, AD-10.64 is not being followed, and in most cases, officer's aren't even aware of its existence. For hours on end plaintiff is confined to his cell without even a sight of an officer, for hours on end, in the deadly heat conditions. This has caused cramping, dehydration, headaches, and the risk of heat related illness and death.

### 3. Suicides

21. Since January of 2022, there have been a total of 11 suicides on the Hughes Unit alone. Dozen's more throughout TDCJ system. This, because there aren't any staff to conduct the necessary supervision of inmates. For hours on end, inmates call for help that never comes due to the critical lack of staffing in TDCJ and on the Hughes Unit. This alone, in saving lives, requires injunctive relief from this Court.

### 4. Inadequate and Insufficient Food

22.   Due to the critical lack of staffing on the Hughes Unit, a discriminatory and disparate treatment of inmates is customary for feeding the inmate population. Plaintiff, who is minimum security and should be allowed hot meals in the chow hall, is instead given paper trays that are usually cold, insufficient and inadequate in nature. Additionally, paper sacks lacking nutritional value and adequate portions. Paper trays, unlike chow hall trays, only hold 4oz of main dish where chow hall trays hold 8oz.

23. Plaintiff is made to eat these cold trays in his housing area within the toilet area where numerous inmates congregate and use, which violates both TDCJ Policy and the Constitution.

24. This discriminatory and disparate treatment of plaintiff who is similarily situated to those who are allowed to eat in the chow hall, violates plaintiff's constitutional rights. It exposes..him to airborne particles from the toilet, disease and illness, etc.

### 5. Denial of Religious Services

24.   Due to the critical lack of staffing, plaintiff is routinely denied access to religious services.

25. Plaintiff is a Native American and requires group services in order to access the Sacred Items stored in the prison Chapel.

### 6. Exposure to Illegal Substances

26.   During his incarceration within TDCJ, plaintiff has been housed on four (4) different units. The Hughes Unit, like all other units, is riddled with the presence of numerous illegal substances. Cocaine, Meth, Ice, Exctasy, Fentanyl, Heroine, K2, Marijuana, Vicodin, etc., are all available without limitation and used in all areas of the prison without oversight. At any time, plaintiff who is not, and has never been a drug user, can seek out and find any illegal substance named herein within minutes, all provided by correctional officer's for high profit.

27. Plaintiff is constantly exposed to smoke filled air of lethal K2 smoke, Meth/Ice Smoke, which causes him to experience severe breathing issues, migraine headaches, dizziness, blurred vision, etc.

28.   Plaintiff is exposed to the erratic, violent, and uncontrolled behavior of other inmates who are under the effects of these illegal drugs, in the absence of any correctional officer's to stop it.

29.  Inmates use these illegal drugs in the open, without oversight, because there aren't any staff anywhere to control it or stop it.

30. Due to the critical lack of staffing necessary to ensure the security of the prison's, officer's are free to smuggle in these illegal substances in abundance without detection. They are not coming in from the mailroom as TDCJ would have you believe.

31. Cellphones are everywhere within TDCJ, as well as the Hughes Unit, and plaintiff can readily seek one out within minutes for the price of $1,500 dollar's, smuggled in by correctional staff. These phones are used to gather information about inmates, and to

advance gang activities, etc. They have caused the assaults of numerous inmates, supported the financial transactions of buying the illegal substances from staff, etc. Additionally, to harrass and contact Court officials and citizen's.

32. These illegal items place plaintiff in grave danger from attack by an inmate under the control of these illegal drugs, as well as unwanted and circumstantial injury from gang battles for control and profit of these items.

33. Plaintiff has experienced extreme violence that went undetected due to the absence of any correctional staff to stop it, and due to the effects of these illegal substances on other inmates.

## B.  RLUIPA VIOLATIONS

33.  Constantly and repeatedly, plaintiff is denied access to group religious ceremony due to staff shortage.

34.  Plaintiff is a Native American, and requires access to the Sacred Items necessary to practice his faith, which are stored in the Chapel.

35.  While the Hughes Unit is a Native American Designated Unit, other faith groups are provided more time for service, as well as additional accomodations that Native American Faith Group is not, such as community meals and festive celebrations, access to all religious items in totality and available, adequate amount of time to perform a ceremony, field support/spiritual mentorship by Native American Group Elder's, etc.

36.   Plaintiff is the Speaking Elder of the Hughes Unit Native American Faith Group, as he has been on other Units. Plaintiff has more than 45 year's of Native American Spiritual and Ceremonial Practice, and has offered to serve the faith group as a spiritual and crisis mentor in the absence of services due to staff shortage, as the Christian, Neo-Pagan, Jewish, Muslim, and other faith groups are provided on the Hughes Unit.

37. Though plaintiff is Native American, has 45 year's of pure Native American Experience, has lived on an Indian Reservation in Minnesota most of his life, is Minimum Security, Extensively Educated and Certified, and without disciplinary infractions, the defendant's continually refuse to allow him to mentor and serve his Native Faith Group as they have allowed/continue to allow other faith groups to do.

38.   Numerous times, during the cancellation of religious services due to staffing shortages, defendants Armstrong, Voyles, and Anderson, have sent Christan, Muslim, Jewish, and Neo-Pagan faith members to his cell to provide faith based mentorship and service. Even allowing them to play Christian music over a loud speaker in front of plaintiff's cell door, etc. There isn't a single Native American present during these times.

39.   Native American's are not represented in the Chapel with inmate worker's and volunteer's as other faith groups are, which causes discrimination and disparate treatments of Native Americans.

40.   Recently, plaintiff was invited to speak at the Unit Graduation Ceremony because of his educational and professional accomplishments during his incarceration. But only yesterday, that invitation was

revoked by defendants Armstrong, Voyles, and Anderson, because plaintiff is "Native American" and not Christian. This, while Christian inmates and other faith group inmates are allowed to attend and participate in that graduation ceremony.

41.   Plintiff wrote a speech to be delivered, and was accepted by the Hughes Unit Education Department. It was the defendants, and without justification, discriminatorily, that denied plaintiff the opportunity and honor he was offered.

42. Defendant Anderson refuses to allow Native American Faith Group to utilize all 44 Sacred Items in their Sacred Bundle, provided by TDCJ. Defendant Anderson limits these items to only 10, and requires plaintiff to "choose which items you want, because you aren't getting everything." This violates plaintiff's right to worship and faith. because all 44 Sacred Items are necessary for worship and service.

43. Plaintiff has been denied the wearing of a headband to and from services, while other faith groups are allowed to wear head coverings such as Muslims and Jews.

## C. Denial of Adequate Footwear

44.   Plaintiff suffers from a dehabilitating and chronic foot and ankle injury that requires additional support and footwear.

45.   Plaintiff experiences severe swelling, bruising, and pain when adequate footwear is not provided to him.

46.   Plaintiff has attempted for more than two (2) years to obtain adequate footwear via an outside medical purchase without succeess. In fact, plaintiff was unable to purchase any shoes whatsoever.

47. In May of 2022, defendant Mendoza implemented policy that allows for inmates to purchase shoes via an outside vendor in the absence of footwear at the unit level. He delegated that access to unit warden's.

48. Plaintiff has requested outside purchase of shoes to facilitate his injury, which has been repeatedly denied by defendant Armstrong at the same time that he has allowed other inmates similarity situated as plaintiff to purchase them via the approved vendor.

49. Recently, in the absence of shoes, plaintiff was forced to purchase an inadequate pair of shoes that are far too small for his feet and cause pain, just so that he would have protection on his feet of any kind.

50. Plaintiff has been provided outside purchase of shoes on other penelogical institutions to satisfy his medical condition, and the denial by defendant Armstrong is malicous, cruel, and without any peneological justification.


## D. Insufficient and Negligent Medical Care

51. Plaintiff suffers from an endocronologal disease called Hypogonadism. For 35 years, he has been issued testosterone injection to relieve him of pain and side effects associated with the disease, well documented in his medical records.

52. Plaintiff previously filed suit in this Court for this issue, but voluntarily dismissed the suit on the promise by defendants to increase the dosage and to follow plaintiff's medical treatment history. Case# 6:21-cv-1129.

11.

53. Since dismissing that lawsuit, defendant McKinney has failed to follow through on his promise, and has left plaintiff to suffer the painful side effects associated with the lack and insufficient treatments.

54. Medical doctors on the Hughes Unit have referred plaintiff to Dr. McKinney numerous times for re-evaluation and to increase his testosterone dosage in the elimination of painful symptoms, etc., without any success.

55.  Dr. McKinney could easily eliminate plaintiff's suffering by following both his medical treatment history, as well as the routine treatment and dosage maintained..by the medical community, as well as the manufacturer's of testosterone, etc.

56.  Dr. McKinney's treatment is inadequate and negligent, and has caused cruel and unusual pain of plaintiff that could easily be eliminated with adequate and available treatments.

57. Plaintiff requires 300mg of testosterone bi-weekly to reduce and eliminate his symptoms of pain, fatigue, headache, testicular pain and cramping|'. etc. At minimum, 200mg bi-weekly as the single dose testosterone comes packaged for administration. Single dose because that is the expected and normal dosage for hypogonadism, which Dr. McKinney ignores.

58. While plaintiff is denied adequate testosterone to eliminate his painful sysmptoms|'. transgender females are provided testosterone simply because the want it. As well, transgender men are provided female estrogen simply because they want it.

59. Plaintiff requires testosterone, he does not simply want it.

### E.  Denial of Mail and Right To Appeal

60. Numerous times, plaintiff has had his mail refused due to an alleged "suspicious substance" on the envelope or letter. Not an illegal substance.

61. These stains and alleged "substances" are caused by normal handling of mail, and not any illegal substance, etc.

62. After denial, plaintiff is not provided an option to appeal the denial.

63. One of the letter's that was denied recently, was news from his family that his younger sister had died from Cancer. The alleged "suspicious substance" was the perfume on the wrist of the 88 year old family member whom had written the letter.

64. It is normal, due to critical staffing issues, for mail to be delayed for 10-14 days, to include legal mail. In some instances, mail is lost and never delivered at all. This denies plaintiff the right to receive correspondence.


### F.  Deliberate Indifference

65.  Repeatedly, plaintiff has made defendants aware of these issues in attempt to eliminate them. Repeatedly, defendants hide behind the umbrella that staffing shortages override his constitutional rights in all instances.

66. Even on appeal, when informed of the violation's, defendants refuse to address and eliminate the violations. They remain in absolute and deliberate indifference to them all.

## G. Retaliation

67.  Since informing defendants Armstrong, Voyles, and Anderson of his intent to litigate these issues, he has faced retaliation.

68. Defendants have withdrawn plaintiff's invitation to speak at the Hughes Unit Graduation Ceremony, reflecting on his extensive education and publication accomplishments during his incarceration.

69.  Defendants have moved plaintiff's Native American Service Group to a smaller time window, and reduced his setup time to conduct his services for the Native American Group.

70. Defendant Anderson promoted the possibility of transfering plaintiff to a "worse unit" for complaining and filing lawsuit.

71. Defendants have revoked plaintiff's recent publication into The Echo prison newspaper for his educational and publication success during his incarceration, after having been interviewed and photographed for the publication, etc. A great honor for his hard and positive work while incarcerated.

### V. Exhaustion of Remedies

72.  Plaintiff has timely and effectively exhausted all administrative remedies prior to filing this suit.

## VI.   Claims for Relief

73.   The critical lack of staffing violates the Eighth Amendment of the Constitution and poses threat to plaintiff, and to the public.

74.   The denial of Native American Services and Equal Treatments of Religion violates the First Amendment of the Constitution. It also violates RLUIPA Laws.

75.   The denial of medically necessary and approrpiate footwear via outside vendor violates the Eighth Amendment of the Constitution.

76.   The denial of sufficient and adequate treatment of plaintiff's hypogonadism violates the Eighth Amendment of the Constitution.

76.   The denial of mail, and the right to appeal, violates the First Amendment of the Constitution.

77.   The extensive delay in delivering mail, violates the First Amendment of the Constitution.

78.   The deliberate infifference to these violations, and the refusal to corrent and liminate them, violates the Eighth Amendment of the Constitution.


## VII.   Prayer for Relief

79.   Declaratory judgment on the issues in favor of plaintiff.

80.   Injunctive relief ordering the defendants to:

  - Immediately provide adequate staffing;
  - Immediately provide footwear to plaintiff that are adequate for his medical needs;
  - Immediately provide equal treatment and opportunity for Native American Service Group Members;
  - Immediately eliminate all violations named in this complaint by Plaintiff.

- Immediately provide outdoor recreation;
- Immediately eliminate all illegal drugs and contraband cellphones throughout TDCJ in totality;
- Immediately ensure that all living areas are staffed with a security officer on the floor, per policy, at all times;
- Immediately eliminate the excessive heat risks on the unit by enforcing and following TDCJ AD-10.64 at all times, without exception;
- Immediately cease any and all retaliation against the plaintiff in totality, to include the transfer to any other prison.

81.  Award Compensatory damages against the defendants both jointly and severally in the amount of $50,000 dollars in their individual capacities.

82.  Award Punitive Damages against the defendants for their deliberate indifference to plaintiff's claims after being informed of them, in the amount of $25,000 dollar's both jointly and severally.

83.  Grant any other relief as it may appear plaintiff is due and entitled, but has failed to list here, in liberal construal.

84.  Trial by jury is hereby demanded on all claims alleged herein'. and the parties are hereby notified pursuant to Fed. R. Civ. P.38 (a)·(c).

    Respectfully submitted on July 25, 2022.

                                Raymond E. Lumsden #2109472
                                3201 FM 929
                                Gatesville, TX 76597

                                Pro se

## VIII.  Verification

Pursuant to 28 U.S.C. § 1746, I, Raymond E. Lumsden, do declare under penalty of perjury under the laws of the United States of America, that I have read the foregoing and that is it true and correct to the best of my belief and knowledge.

Dated this 25th day of July, 2022.

Raymond E. Lumsden #2109472

25, July, 2022


U.S. District Clerk
Western District of Texas
800 Franklin Ave, Room 380
Waco, Texas  76701




Dear Clerk:


Enclosed, please find my complaint and IFP application.
I please request that you file it, and bring it to the attention
of Judge Albright at your earliest of convenience.

The staffing inadequacy that led to the recent escape of
an inmate here, and subsequent murder's, has only worsened.
Without Federal Oversight, TDCJ will continue to place inmates
and the public at risk of harm, or death.

I pray for oversight.



Respectfully,

Raymond E. Lumsden
2109472
Hughes Unit
3201 FM 929
Gatesville, TX 76597


P.S. I have requested Trust Fund Statement
3 times without response due to staff shortages.
I'm still indigent/without income.

Dear Clerk,

I was refused a photocopy of the enclosed. May I please receive a returned copy upon filing?

I'll need it to further advance my lawsuit / claims! I've no other remedy for a copy!

God Bless + Thank you!

Raymond E Lumsden
#2109872

R. Himtra
Hughes Unit
3201 FM 929
Gatesville, TX
   76597

U. S. Di

Western

800 Fran

Waco, T

RECEIVED:

JUL 28 2022

CLERK, U S DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

• Legal Mail •

Austin PSC TX 78710

TUE 26 JUL 2022   PM

...trict Court
...strict y Texas-Waco
...lin Ave, Rm #380

...exas

...76701